UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HERBERT LEE SANDERS,

                Petitioner,

v.                                  Case No. 05-CV-73533-DT

KENNETH ROMANOWSKI,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Herbert Lee Sanders, a state prisoner currently confined at the Lakeland Correctional Facility in Coldwater, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 envelop asserting that he is being held in violation of his constitutional rights. Petitioner was convicted of first-degree home invasion, Mich. Comp. Laws § 750.110A(2), second-degree home invasion, Mich. Comp. Laws § 750.110A(3) and larceny in a building, Mich. Comp. Laws § 750.360, following a jury trial in the Lenawee County Circuit Court. He was sentenced as a fifth habitual offender, Mich. Comp. Laws § 769.12, to concurrent terms of 10 to 20 years imprisonment, six years four months to 10 years imprisonment, and two years 10 months to 15 years imprisonment.

In his pleadings, Petitioner raises claims concerning the validity of a photographic array and the admission of identification testimony and the effectiveness of defense counsel. For the reasons set forth below, the court will deny the petition.

## I.  BACKGROUND

Petitioner's second-degree home invasion conviction arises from his conduct in entering the home of Yolanda Lopez without permission on November 28, 2001. Petitioner's first-degree home invasion and larceny from a building convictions arise from his conduct in forcing his way into Lopez's home, injuring Lopez, and stealing several CDs and DVDs on December 8, 2001.

At trial, Yolanda Lopez testified that a man, later identified as Petitioner, came to her door on November 28, 2001.  Petitioner asked to see Lopez's son, Carlos, saying that he was from Missouri and had known Carlos since 1992.  Lopez described Petitioner's physical appearance and the clothing he was wearing that night.  As Lopez and her daughter, Noelia, left to locate Carlos, she observed Petitioner entering a window of the home.  Petitioner fled before police arrived at the scene.  Lopez testified that she again found Petitioner breaking into her home on December 8, 2001.  She again described his appearance and said that she recognized him as the same man from the November incident.  A confrontation and physical confrontation ensued between Petitioner and Lopez, which included Lopez's son, Daniel.  Petitioner grabbed some CDs and DVDs as he fled the home.  Following this incident, the police showed Lopez a photographic array and she identified someone other than Petitioner as the perpetrator.  Lopez testified that she now recognized Petitioner as the person who broke into her home because he mouthed or mumbled some words to her in court which helped her remember and identify him.

Noelia Lopez also testified about the November 28, 2001 incident, essentially corroborating her mother's testimony.  Noelia Lopez identified Petitioner as the

2

perpetrator of the crime in the photographic array prior to trial and in the courtroom during trial.  Daniel Lopez testified about both incidents in a manner similar to his mother and his sister.  He said that he got a good look at the perpetrator on those nights and that he was sure that Petitioner was the person involved in both incidents.  He also identified Petitioner as the perpetrator of the crime in the pre-trial photographic array. Carlos Villanueva testified that he saw Petitioner earlier in the day on November 28, 2001 and that Petitioner had asked him if he was still living at home.  Villanueva further testified that, at the time of this conversation, Petitioner was wearing clothing similar to that which his mother, Yolanda Lopez, had described.

Adrian Police Officer Bradley Horn testified that a few hours after taking the home invasion complaint on December 8, 2001, he responded to an unrelated call and came into contact with Petitioner.  Officer Horn noted that Petitioner was dressed in a manner similar to the man the witnesses had described, but Petitioner denied being involved in the incident.  Adrian Police Detective Jeffrey LaBarr testified about the photographic array shown to the witnesses after the incident and prior to Petitioner's arrest.  The array was admitted into evidence without objection, as was the related identification testimony.  The photographs in the array depicted men with similar appearances, except that in Petitioner's photograph there was a white placard while the other individuals' photographs had black placards.  Detective LaBarr explained that the difference was due to the fact that the Sheriff's Department uses white placards for "mugshot" photographs and the Adrian Police Department uses black placards for photographs.

3

Petitioner also testified at trial.  He denied committing the crimes and denied seeing Carlos Villanueva on November 28, 2001.  He also presented alibi witnesses for the December 8, 2001 offense who testified that he was on a social visit at a friend's home during the time in which the crime occurred.

At the close of trial, the jury found Petitioner guilty of second-degree home invasion for the November 28, 2001 incident and guilty of first-degree home invasion and larceny from a building for the December 8, 2001 incident.  The trial court subsequently sentenced Petitioner as a habitual offender to concurrent terms of 10 to 20 years imprisonment, six years four months to 10 years imprisonment, and two years 10 months to 15 years imprisonment on those convictions.

Petitioner filed an appeal with the Michigan Court of Appeals raising the claims contained in the present petition.  The Michigan Court of Appeals affirmed his convictions.  *People v. Sanders*, Nos. 246346, 246347, 2004 WL 1103956 (Mich. Ct. App. May 18, 2004).  Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied.  *People v. Sanders*, 688 N.W.2d 830 (Mich. 2004).  Petitioner thereafter filed his federal habeas petition, raising the following claims: (1) The photographic identification testimony should have been suppressed where the unique white placard surrounding Petitioner's image was severely prejudicial. Because defense counsel lodged no objection, where the error was decisive of the outcome, thus in the alternative, the trial court should have conducted an evidentiary hearing regarding counsel's ineffectiveness under the Sixth Amendment to the United States Constitution; and (2) Petitioner was deprived of his Sixth Amendment constitutional right to the effective assistance of counsel under the United States

4

Constitution where counsel failed to object to the suggestive identification testimony and where counsel failed to object to the prosecutorial use of inflammatory and irrelevant photographs of complainant's body.  Respondent has filed an answer to the habeas petition asserting that the claims should be denied for lack of merit.

## II.  STANDARD

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he

5

'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.  While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review.  *See* 28 U.S.C. § 2254(e)(1).  A habeas

6

petitioner may rebut this presumption with clear and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## III.  DISCUSSION

### A.  Photographic Array and Identification Claims

Petitioner first alleges that he is entitled to habeas relief because the trial court erred in failing to suppress identification testimony which was tainted by a suggestive pre-trial photographic array and was conducted in the absence of counsel.  Defense counsel did not object to the admission of the array and identification testimony.

Habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  The United States Supreme Court has explained that a petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case rested its judgment on the procedural default.  *See Wainwright v. Sykes*, 433 U.S. 72, 85 (1977).

In such a case, a federal court must determine not only whether a petitioner has failed to comply with state procedures, but also whether the state court relied on the procedural default.  "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."  *Harris v. Reed*, 489 U.S. 255, 263-64 (1989).  The last *explained* state court judgment should be used to make this determination.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).  If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion.  *Id.*

7

Here, the Michigan Court of Appeals rendered the last reasoned opinion.  In dismissing Petitioner's claim, the court relied upon a state procedural bar–Petitioner's failure to object to the identification testimony at trial.  *See Sanders*, 2004 WL 1103956 at *1.  The failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review alleged trial court errors.  *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991) (finding that the failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review alleged trial errors).  Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits.  *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989).  Plain error review does not constitute a waiver of state procedural default rules.  *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000).  Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative.  *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).  In this case, the Michigan Court of Appeals denied these claims based upon Petitioner's failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice.  *See Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).  Petitioner contends that trial counsel was ineffective for failing to object at trial.  Even assuming that Petitioner could show that counsel

8

erred in some way, however, he cannot establish prejudice to excuse his default or to establish that counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984), as his underlying claim lacks merit.

Petitioner asserts that he is entitled to habeas relief because the photographic array shown to the eyewitnesses was unduly suggestive.  A conviction based on identification testimony following pre-trial identification violates due process when the pre-trial identification procedure is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  *Simmons v. United States*, 390 U.S. 377, 384 (1968).  An in-court identification by a witness to whom the accused was exhibited before trial in an unduly suggestive manner must be excluded unless it can be established that the identification has an independent origin which is not tainted by the suggestive pre-trial identification procedures.  *See Wade v. United States*, 388 U.S. 218, 241 (1967).

A two-step analysis applies to decisions concerning the admissibility of identification evidence.  First, a court must determine whether the identification procedure was impermissibly suggestive.  Second, if the court finds that the identification procedure was impermissibly suggestive, the court must determine whether, under the totality of the circumstance, the testimony was nevertheless reliable.  *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).  "If the defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification was otherwise reliable, then no due process violation has occurred."  *Id.*

9

The United States Supreme Court has declared that "reliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).  In *Neil v. Biggers*, 409 U.S. 188, 198-99 (1972), the Supreme Court listed five factors that should be considered when evaluating reliability: (1) the witness's opportunity to view the perpetrator during the crime; (2) the witness's degree of attention during the crime; (3) the accuracy of the witness's prior description of the perpetrator; (4) the witness's level of certainty when identifying the defendant at the confrontation; and (5) the length of time that has elapsed between the crime and the confrontation.  "The degree of reliability of the identification, as indicated by the above-stated factors, is to be considered in light of the degree of suggestiveness of the identification procedure and of the totality of the circumstances in determining whether due process requires suppression of the identification.  *See Manson*, 432 U.S. at 113-14; *Carter v. Bell*, 218 F.3d 581, 605 (6th Cir. 2000).

In reviewing this issue for plain error, the Michigan Court of Appeals ruled that the photographic array was not impermissibly suggestive and that, even it were, Petitioner was not prejudiced by it.  *See Sanders*, 2004 WL 1103956 at *1.  Having reviewed the record, this court concludes that the Michigan Court of Appeals' determination in this regard is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law or the facts in light of the evidence.  First, the photographic array shown to the witnesses was not unduly suggestive.  The array contained six photographs of similar size and the individuals depicted in those photographs generally fit the description of the perpetrator and bore a resemblance to Petitioner.  While Petitioner was the only person with a white placard,

10

all of the individuals held a placard.  The Sixth Circuit has held that a photo of a federal defendant with indications that it was a "mug shot" was not unduly suggestive even though none of the other pictures in the array contained similar mug shot markers; the obverse has also been approved: an array picturing a defendant without mug shot markers was not unduly suggestive even though all other defendants' pictures did have the markers.  *See United States v. Tyler,* 714 F.2d 664, 667-68 (6th Cir.1983); *United States v. Perry,* 991 F.2d 304, 311 (6th Cir.1993).  The minor differences in mug shot markers here are far less suggestive than the absence or presence of mug-shot markers as explained in *Tyler* and *Perry*.  In light of the similarities among the pictured individuals, the photo spread here was not unduly suggestive .

Also, the fact that victim Yolanda Lopez identified someone other than Petitioner when viewing the array indicates that the array was not unduly suggestive.  Further, the record reveals that the witnesses' in-court identifications of Petitioner were reliable. The witnesses had an opportunity to see the perpetrator at the time of the incidents and there was no evidence that their physical or emotional conditions impeded their ability to observe the man whom they described to police.  Significantly, none of the witnesses expressed any doubt about their identifications of Petitioner when testifying at trial.  They also indicated that their identifications were based upon their recollections of the incidents.  Considering the totality of the circumstances, this court concludes that the in-court identifications were sufficiently reliable and independent of the photographs such that Petitioner's due process rights were not violated by the admission of the identification testimony.

11

Petitioner also seems to assert that the photographic array and related identifications were inadmissible due to the absence of counsel during the array. However, the Sixth Amendment does not grant a defendant the right to counsel at a photographic array conducted by the government for the purpose of allowing a witness to attempt the identification of the offender, even when the array is conducted after an indictment or charges have been returned. *See United States v. Ash*, 413 U.S. 300, 321 (1973); *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1071 (E.D. Mich. 2000).[1] Thus, the mere fact that counsel was not present at the time of the photographic array does not render the subsequent identifications unconstitutional as a matter of federal law.

Lastly, Petitioner has not established that a miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing.

---

[1]Michigan law provides that a photographic identification in the absence of counsel when a defendant is in custody, absent exigent circumstance, is inappropriate. *See People v. Kurylczyk*, 505 N.W.2d 528 (Mich. 1993). Such is not the case in the federal system. *See, e.g., United States v. Louis*, 679 F. Supp. 705 (W.D. Mich. 1988). Further, as noted by the Michigan Court of Appeals, Petitioner was not in custody at the time of the photographic array. *See Sanders*, 2004 WL 1103956 at *1.

These claims are thus barred by procedural default, otherwise lack merit and do not warrant habeas relief.

### B. Ineffective Assistance of Counsel Claims

Petitioner next alleges that he is entitled to habeas relief because defense counsel was ineffective for failing to object to the admission of the identification testimony and for failing to object to the admission of photographs of Yolanda Lopez, which depicted her injuries.

In *Strickland*, the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient, which requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

13

proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

Applying the *Strickland* standard, the Michigan Court of Appeals ruled that counsel was not ineffective. The court determined that counsel's decision not to object to the photographic array and identification was sound trial strategy because counsel chose instead to cross-examine the police officer about the composition of the array and to cross-examine Yolanda Lopez about her failure to identify Petitioner in the array. The court further determined that counsel was not ineffective for failing to object to the admission of the photograph depicting Yolanda Lopez because such evidence was relevant and properly admitted under Michigan law. *See Sanders*, 2004 WL 1103956 at *2.

Having reviewed the record, this court concludes that the Michigan Court of Appeals' decision is neither contrary to, nor an unreasonable application of, established Supreme Court precedent. First, defense counsel was not ineffective for failing to object to the photographic array and identification testimony, as the array was not unduly suggestive in any event and the in-court identifications were reliable. Moreover, as noted by the Michigan Court of Appeals, counsel's decision to challenge the photographic array and identification testimony through cross-examination of the witnesses was a sound and reasonable trial strategy. Second, defense counsel was

14

not ineffective for failing to object to the photographs of Yolanda Lopez given that such evidence was relevant and admissible under state law. Defense counsel cannot be deemed ineffective for failing to assert a meritless claim. *See, e.g., Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). Habeas relief is not warranted on these claims.

## C. Evidentiary Hearing Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the state courts failed to conduct an evidentiary hearing on his claims. The decisions by the state courts that Petitioner was not entitled to an evidentiary hearing under Michigan law are not subject to federal habeas review. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Furthermore, given this court's determination that the foregoing claims lack merit, Petitioner has not established that an evidentiary hearing is warranted in this case.

## IV. CONCLUSION

For the reasons stated above, IT IS ORDERED that the petition for writ of habeas corpus [Dkt. # 1] is DENIED.

s/Robert H. Cleland_____
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: January 29, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, January 29, 2007, by electronic and/or ordinary mail.

s/Lisa Wagner_____
Case Manager and Deputy Clerk
(313) 234-5522